UNITED STATES *v.* KELVIN & WILFRID O. WHITE CO., RICE & CO. CORP. (NO. 3950)[1]

United States Court of Customs and Patent Appeals, January 4, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Joseph F. Donohue*, special attorney, of counsel), for the United States.

*Beardsley & Bradley* (*James W. Bevans* of counsel) for appellees.

*Lamb & Lerch* (*Kenneth G. Osborn* of counsel), *amicus curiae*.

[Oral argument December 10, 1936, by Mr. Lawrence, Mr. Osborn, and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The appellees imported at the port of Boston, Mass., under the Tariff Act of 1930, certain glass sounding tubes which were, by the collector, classified as scientific glassware and assessed with duty at 85 per centum ad valorem under paragraph 218 (a) of the said act.

---

[1] T. D. 48768.

The importers protested the said classification and assessment of duty by the collector and claimed the merchandise dutiable under paragraph 218 (b) of said tariff act at 65 per centum ad valorem.

The United States Customs Court, First Division, sustained the protests and the Government has appealed here. The relevant portions of the statute in controversy read as follows:

PAR. 218 (a) *Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise,* all the foregoing (except articles provided for in paragraph 217 or in subparagraph [e]), finished or unfinished, wholly or in chief value of glass, 85 per centum ad valorem; wholly or in chief value of fused quartz or fused silica, 50 per centum ad valorem. [Italics ours.]

(b) *Tubes* (except gauge glass tubes), rods, canes, and tubing, *with ends finished or unfinished, for whatever purpose used, wholly or in chief value of glass,* 65 per centum ad valorem; wholly or in chief value of fused quartz or fused silica, 40 per centum ad valorem; gauge glass tubes, wholly or in chief value of glass, 60 per centum ad valorem. [Italics ours.]

Before the trial court, the testimony of one witness for the importer and of three witnesses for the Government was heard. Said testimony related to the character and use of the sounding tubes. The facts involved in the case are not in dispute. The articles are hollow, thin, glass articles, tubular in form, about two feet long and ⅜ of an inch in diameter, sealed at one end and open at the other. The interior of the articles is coated with a red chemical solution. They are called sounding tubes and are used to ascertain the depth of water in connection with the science of navigating a vessel from one point to another. They were designed by the English physicist, Lord Kelvin. The glass hollow article here involved is placed in a brass sheath, open end down, and is dropped on the end of a metal line over the side of the ship. The pressure of the water increases in direct proportion to the depth of the water and the salt water is forced into the hollow article. The action of the salt water on the chemical in the interior of the article causes it to change to a white, milky color. When the article is brought to the surface it is placed against the triangular brass head of a scale which is calibrated so as to show the depth indicated by the pressure of the water in the tube. In this manner by the use of the calibrated article, the depth to which the tube had reached is ascertained. The article can be used only in ascertaining the depth of water up to 100 fathoms, is quite accurate, and is used in navigation work by almost all steamships clearing at the port of New York, and by our Navy and Coast Guard.

The only question involved is whether or not the importation consists of tubes or tubing within the meaning of subdivision (b) of said paragraph 218. It is conceded that the articles are in chief value of

glass. If they are not tubes, the correctness of the collector's classification and assessment is not questioned.

The trial court in its decision called attention to the fact that under the Tariff Act of 1922 it had decided the case of *A. Lietz & Co.* v. *United States*, Abstract 1881, 51 Treas. Dec. 1964, which involved the dutiable classification of glass tubing ⁵⁄₃₂ of an inch in diameter and 26 inches in length. It was stated in said *Lietz & Co.* case, *supra*, that the merchandise was not in a finished condition (as is the merchandise at bar), but that the merchandise was used for the purpose of making scientific sounding tubes. The court there held that the articles were scientific articles. In this case it held, in effect, that such scientific articles as were tubes were not dutiable under subdivision (a) of said paragraph 218, but under subdivision (b) thereof. The decision was grounded upon the premise that Congress had made certain changes in the act, among which changes were those of taking tubes out of the predecessor provision of subdivision (a), providing for tubes under subdivision (b), and accompanying the latter provision by the phrase "for whatever purpose used."

We think the issue here involved was settled by this court in two cases decided prior to the trial court's decision in the case at bar, the first of which cases is *United States* v. *E. H. Sargent & Co., Inc.*, 20 C. C. P. A. (Customs) 172, T. D. 45774, and the second, *United States* v. *The A. S. Aloe Co.*, 20 C. C. P. A. (Customs) 319, T. D. 46111.

The *Sargent* case, *supra*, involved an issue which is practically identical with the one at bar, and this court there reversed the judgment of the trial court which held that Bunsen tubes, Roehrig tubes, and absorption tubes were dutiable within the meaning of subdivision (b) of paragraph 218, Tariff Act of 1930, rather than classifiable as scientific articles under paragraph 218 (a). There, as here, the scientific character of the articles was not in question. There, as here, no commercial designation was proven. We held that under the common meaning of the term "tubes", the articles then under consideration were more than glass tubes and that each of them performed a function other than that performed by a "tube" as that term is ordinarily understood. The dictionary meaning of the term "tube" was considered and adopted.

To the same effect was this court's decision in the *Aloe Co.* case, *supra*. The same provisions of the Tariff Act of 1930 that were involved in the *Sargent* case, *supra*, and the case at bar, were then before us. The articles involved were centrifuge sedimentation glass tubes which were designed to be held in a centrifugal machine in applying centrifugal force to the contents of the tubes. The article was described as being tapered to a rounded, closed end. One exhibit contained graduation marks and numbers and the other did not. They

were used for making urinary analyses and were sold by the sellers of surgical instruments and supplies to hospitals and doctors. The court there reviewed the authorities, including the *Sargent* case, *supra*. We again held, as in the *Sargent* case, that that character of merchandise was more than tubes within the common meaning of that term. In substance, we held that although a part of the article was in tubular form and although it might have acquired the trade name of "centrifuge tube," it did not respond to the provision "tubes  *  *  * tubing, with ends finished or unfinished, for whatever purpose used," since this provision was not intended to embrace such chemical or scientific articles as had been so completed as to become articles made from tubes or tubing, which articles performed a definite chemical or scientific purpose, which tubes, as such, according to the common understanding, did not perform.

We are of the opinion that the trial court has, in part, erroneously interpreted the meaning of Congress in its use of the language "for whatever purpose used" in subdivision (b) of said paragraph 218.

In the *Aloe* case, *supra*, we stated:

*  *  *  They are not designed for the purpose of conveying something through them or as a mere holder of something. They are designed to be used, and are exclusively used, as an article or utensil in which and with which is performed a definite chemical analysis, and since it is the article with which the definite chemical operation is performed it is a chemical article and more than a tube.

Moreover, it would seem incongruous to classify articles like those at bar as mere tubes along with rods, canes, and tubing, and class Bunsen tubes, Roehrig tubes, and absorption tubes under paragraph 218 (a). For tariff purposes they should go together.

Paragraph 218 (a) and paragraph 218 (b) have resulted in the Tariff Act of 1930 from a change in and a division of the first part of paragraph 218 of the Tariff Act of 1922. Regardless of what effect the change in language and form of the provisions covering this class of merchandise might be given as affecting certain merchandise, as we view it, it can have little, if any, effect on our conclusions here. It is to be noted that the chief change resulting from the division of a portion of the old paragraph into two subdivisions is the fact that in the act of 1922 the expression was—

biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, utensils, tubing, and rods,

while in the new divided paragraph "tubing and rods" is taken out of subdivision (a) and a new subparagraph is made which says:

(b) Tubes (except gauge glass tubes), rods, canes, and tubing, with ends finished or unfinished, for whatever purpose used, wholly or in chief value of glass, 65 per centum ad valorem;  *  *  *.

Tubing and rods under the old paragraph had to have the qualities of the first part of the paragraph. In *United States* v. *Chesterton Co. et al.*, *supra*, [15 Ct. Cust. Appls. 175, T. D. 42232] it was held that the tubing must be scientific tubing, notwithstanding the fact that the paragraph included the phrase—

whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise.

It seems to us that by the removal of the phrase from subsection (a) and the creation of subsection (b) it was the intent of Congress, first, to include certain tubes and other articles thereunder which did not have a scientific character, and, second, to include canes and finished tubes as distinguished from what might be held to be tubing or material from which tubes were made. Certainly, whatever changes were made, instead of indicating an intent to include a chemical article of the character at bar within subdivision (b), the indication, if any, would be to the contrary. A lower rate of duty was made on tubes in (b) than on chemical, surgical, or scientific articles in (a).

We arrive at a like conclusion in the instant case. As the articles at bar are more than tubes, and therefore not the merchandise Congress had in mind in the enactment of subdivision (b) of said paragraph 218, the term "for whatever purpose used" cannot bring them within the subdivision. The legislative history of the pertinent provisions of the Tariff Act of 1922 and the Tariff Act of 1930 does not suggest a contrary conclusion.

The so-called sounding tubes at bar are tubular in form and are unquestionably made from tubing. The fact that they may be intended for use in a particular scientific field does not necessarily remove them from the category of tubes, since it seems clear that scientific tubes and tubing are to be classified under subdivision (b) of said paragraph 218. But, when scientific tubes or tubing are made into different completed articles which perform particular chemical or scientific purposes, they cease to be the tubes or tubing for which Congress made provision in subdivision (b). When the new article performs a function not performed by tubes or tubing, as those terms are commonly understood, the merchandise loses its character as tubes or tubing.

In the instant case, the interior of the tube has been coated with some chemical which upon coming in contact with ocean water performs a definite function, to wit, depth recording. This is a function which such "tubes" and "tubing" as are provided for in said subdivision (b) do not perform. Although, as above stated, Congress intended to include in subdivision (b) chemical and scientific tubes and tubing, surely it did not intend to make a distinction between the various completed scientific and chemical articles which perform scientific and chemical functions merely because some of them might be tubular in shape. This was pointed out in the *Aloe* case, *supra*.

We are of the opinion that the merchandise here involved was properly classified by the collector. The judgment of the United States Customs Court is *reversed*.